Argued and submitted April 4, affirmed October 10, 2012

Dwight G. PURDY,
Conservator for Isabelle Eve Norton,
a Minor,
*Plaintiff-Appellant,*
*v.*

DEERE AND COMPANY,
a foreign corporation;
and Ramsey-Waite Co.,
a corporation,
*Defendants-Respondents.*

Lane County Circuit Court
160800466; A144265

287 P3d 1281

Kathryn H. Clarke argued the cause for appellant. With her on the briefs was Don Corson.

Michael T. Garone argued the cause for respondents. On the briefs were Jeffrey S. Eden, Schwabe, Williamson & Wyatt, P.C., Emilie Edling, and Bullivant Houser Bailey.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

A young child was severely injured when a riding lawnmower driven by her father backed into her. Plaintiff, the child's conservator, brought this product liability action against the lawnmower's manufacturer, Deere and Company, and the company that sold the girl's father the lawnmower, Ramsey-Waite Company. A jury returned a verdict for the defense. Plaintiff appeals, raising assignments of error regarding several of the court's evidentiary rulings and several of its jury instructions. We affirm.[1]

The following basic historical and procedural facts are undisputed. In May 2006, while mowing his lawn with a Deere riding lawnmower purchased from Ramsey-Waite, Kirk Norton came to a spot where he wanted to drive the mower in reverse. The mower was equipped with a "Reverse Implement Option," or "RIO" feature, that cuts power to the spinning blade, causing it to slow and stop. However, the mower also had a small button on the dashboard that, when pressed, would override RIO, allowing the operator to move in reverse while the blades are engaged. Norton pressed the override button; at approximately the same time, he also looked over his right shoulder and did not see any hazards. Tragically, his two-year-old daughter had approached the tractor from the left, in Norton's "blind spot." Moving in reverse with the cutting blades engaged, Norton backed into her. She sustained serious injuries resulting in the amputation of one of her legs.

Plaintiff brought this product liability action, ultimately alleging negligence as to both defendants and strict liability against Deere. As developed at trial, plaintiff's theory of the case was that Deere designed and marketed a defective and unreasonably dangerous mower, and both Deere and Ramsey-Waite failed to provide Norton with adequate warnings and instructions. In particular, plaintiff alleged that the mower was defective in three respects: because it "had mowing blades that could be engaged and rotating while driving in reverse" by virtue of the RIO override button; because that button was located in front of

---

[1] Because we affirm the judgment for defendants, we need not address their cross-assignments of error.

the operator on the mower's dashboard, instead of behind the seat, so that the operator could choose to keep the blades fully powered without turning completely around to look to the rear; and because defendants provided inadequate instructions "in the safe operation of a lawnmowing machine that had mowing blades that could be engaged and rotating while driving in reverse." Defendants' theory was that the mower was not defective or unreasonably dangerous because ordinary consumers know that all riding lawnmowers inherently present certain dangers, and Deere had taken all reasonable steps to ensure that, when delivered to Norton, the product was as safe as a riding mower possibly could be. Defendants also argued that the child's injuries would have occurred even if Norton had not engaged the RIO button, because, even though the mower's power to the blades would automatically have shut down when he put the mower in reverse, the blades would have continued to move by momentum for several seconds, during which time the accident would have occurred. After a 13-day trial, the jury returned a defense verdict.

On appeal, plaintiff raises 10 assignments of error. Four concern trial court rulings that disallowed evidence of "other similar incidents" involving Deere riding mowers, in particular, testimony from parents of other children injured in back-over incidents both before and after the incident in this case, as well as documents from Deere's files (but not generated by Deere) containing evidence of other back-over injuries before the injury in this case. According to plaintiff, the testimony and documents regarding incidents before the one in this case were relevant to show that Deere had notice of the mower's potential to inflict injury in backup accidents, and the evidence regarding incidents after the one in this case were relevant to show "continuing defect." One assignment of error concerns the court's ruling that plaintiff could not introduce evidence showing that Deere marketed small toy riding lawnmowers; plaintiff's theory was that the toys created consumer expectations that the mowers were safe to operate around children. One assignment challenges the court's decision to allow one of defendants' witnesses to testify as an expert. The four remaining assignments deal with jury instructions; three concern instructions that the

court gave over plaintiff's objections, and one concerns the court's refusal to give an instruction that plaintiff requested.

At the outset, defendants raise an argument that, in many ways, preempts most of plaintiff's assignments of error. That argument derives ultimately from *Shoup v. Wal-Mart Stores, Inc.*, 335 Or 164, 61 P3d 928 (2003), and more directly from *Lyons v. Walsh & Sons Trucking Co., Ltd.*, 337 Or 319, 96 P3d 1215 (2004), a case decided in the wake of *Shoup. Shoup* itself involved a defendant's appeal from a general jury verdict in favor of the plaintiff, who had alleged three specifications of negligence. 335 Or at 166-67. This court held that one of the specifications did not state a claim under Oregon law, but that two did; we remanded the case for a new trial. *Id.* at 166-68. In doing so, we relied on a line of Supreme Court cases adopting the so-called "we can't tell" rule: If the lower court's judgment could have been based on an erroneous rationale, the appellant was entitled to a remand for a new trial. *Id.*

The Supreme Court allowed review, rejected its earlier line of cases, and adopted a new rule that, the court reasoned, more accurately captured the legislative mandate of ORS 19.415(2), under which an appellate court may not reverse "except for error substantially affecting the rights of a party." *Id.* at 166, 173-74. Where the former rule called for reversal or remand of a judgment if the record disclosed that the lower court's judgment *might have* been prejudicial—that is, *might have* derived from an erroneous argument or specification—the new version calls for reversal or modification only if the appellant can identify something in the record to demonstrate that the jury *in fact did* base its verdict on the erroneous argument or specification. *Id.* at 169-70, 177-79. Only then, the court reasoned, can it be said that "the error 'substantially affect[ed] the rights of a party.'" *Id.* at 174 (quoting ORS 19.415(2)) (brackets in *Shoup*). Further, the burden of showing that the error was harmful—that it *did* substantially affect the rights of a party because the disputed verdict could *not* have been based on a nonerroneous argument—falls on the appellant, who must prove not only error but prejudice. *Id.* at 173-74.

*Shoup* involved a general verdict that did not indicate which of several specifications of negligence the verdict was based on, where only one of them was erroneous. *Id.* at 166. *Lyons* applied the teaching of *Shoup* in somewhat different circumstances. The plaintiffs' son was killed when a car in which he was a passenger collided with a truck driven by the defendant's employee. *Lyons*, 337 Or at 321-22. The plaintiffs, in their capacity as the deceased's personal representatives, brought a wrongful death action. *Id.* at 321. Over the plaintiffs' objection, the court allowed the defendant to introduce some evidence that the car's driver was at least partly responsible for the collision, and it refused to instruct the jury that it could not consider the driver's conduct unless that conduct was the "sole and exclusive" cause of the accident. *Id.* at 322-23. The court gave the jury a special verdict form. *Id.* at 323. The first question was:

> "Was defendant WALSH & SONS TRUCKING CO., LTD. negligent in one or more ways claimed by the plaintiffs and, if so, was such negligence a cause of damage to the plaintiffs?"

*Id.* The jury answered that question in the negative and returned a defense verdict. *Id.* On appeal, the plaintiffs challenged the court's evidentiary ruling and jury instruction, arguing that the instruction and the evidence involving the alleged contributory fault of the driver misstated the law. *Id.* at 323-24. This court disagreed and affirmed. *Id.* at 324.

The Supreme Court allowed review, but it did not address the merits of the plaintiffs' assignment of error. *Id.* Rather, it explained that "we cannot reach that issue because of the nature of the verdict that the jury rendered." *Id.* Pointing out that the question on the verdict form asked a compound question, the court stated,

> "[T]he issue naturally arises: Did the jury decide that Walsh was not negligent or, instead, did the jury decide that Walsh, although negligent, did not cause damage to plaintiffs [because the driver did]? The answer is that we cannot tell; either decision would have been permissible on the evidence presented.

> "Our inability to determine which ground led the jury to decide as it did is important, because plaintiffs have

focused all their arguments in this court on the second part of the question. That is, plaintiffs assert that the instructions that the trial court gave and the evidence that it admitted improperly permitted the jury to consider [the driver's] conduct in assessing whether Walsh's conduct was a substantial factor in causing the accident. But such errors by the trial court, if errors they were, are irrelevant if the jury decided the case instead on the pristine proposition that Walsh was not negligent.

"* * * * *

"What this court stated in *Shoup* applies equally to the narrow problem that the form of jury verdict used in the present case poses. * * * The jury verdict could have been based on one of two different rationales that the jury verdict form identified [*i.e.*, negligence or causation]; it is impossible to tell which the jury used. Plaintiffs' claims of error may or may not be well taken, but they depend on an assumption that the jury's verdict was based on [causation] only. The present record does not support plaintiffs' assumption, and, because they are asserting error, the consequences of the inadequacy of the record in that respect fall on plaintiffs. [*Shoup*, 335 Or] at 174. That is, plaintiffs cannot show, on this record, that any of the alleged errors about which they complain 'substantially affect[ed]' their rights."

*Lyons*, 337 Or at 325-26 (last brackets in original; footnote omitted). Thus, where a compound question on a verdict form asks whether a defendant's conduct failed to meet the relevant standard of care and, if so, whether that failure was the cause of the plaintiff's damages, a single answer of "no" does not reveal whether the jury's answer means "no failure to meet the standard of care," or "failure to meet the standard of care, but no causation." *See id.* at 325. In such a situation, any assignment of error that addresses only one question must be rejected if there is sufficient evidence to support the other ("either decision would have been permissible on the evidence"): If the assignment of error challenges the jury's determination that there was no failure to meet the standard of care, the plaintiff cannot prevail because, even if the argument is well taken, it is irrelevant (and the error, therefore, harmless) if that failure did not cause injury. *Id.* Likewise, if the assignment of error challenges causation, that argument may be well taken, but it is irrelevant (and

the error, therefore, harmless) if there was no failure in the first place.[2] *See id.*

Defendants in the present case argue that the questions presented to the jury in this case, as was the question in *Lyons*, are compound, addressing both standard of care and causation. Here, the verdict form contained three questions:

"1. Was Defendant Deere & Company's lawn mower/ tractor defective and unreasonably dangerous in one or more of the ways alleged by Plaintiff, and if so, was that a cause of injury or damage to Isabelle Norton?

"2. Was Defendant Deer & Company negligent in one or more of the ways alleged by Plantiff, and, if so, was that a cause of injury or damage to Isabelle Norton?

"3. Was Defendant Ramsey-Waite negligent in one or more of the ways alleged by Plantiff, and, if so, was that a cause of injury or damage to Isabelle Norton?"

Thus, according to defendants, *Shoup* and *Lyons* require us to reject all of plaintiff's assignments of error involving evidentiary issues and jury instructions addressed to culpability only; even if those assignments of error are well taken, plaintiff has still not established that the errors were prejudicial, because plaintiff has not eliminated the possibility that the jury found for the defense based on

---

[2] In *Wallach v. Allstate Ins. Co.*, 344 Or 314, 329, 180 P3d 19 (2008), the court "reaffirm[ed] the general rule *** that, when a trial court incorrectly instructs the jury on an element of a claim or defense and when that incorrect instruction permits the jury to reach a legally erroneous result, a party has established that the instructional error substantially affected its rights within the meaning of ORS 19.415(2)." In the process, the court limited the holding in *Lyons* to circumstances in which the verdict form presents the jury with two different rationales, thereby making it impossible to tell which the jury used. *Id.* at 328-29. Although the dissent in *Wallach* questioned whether a principled distinction could be drawn between *Lyons* and *Wallach*, the court expressly declined to overrule *Lyons*:

"We need not decide whether *Lyons* was correct in positing that the jury verdict form in that case and instructional error present distinct issues for the purposes of ORS 19.415(2). [*Wallach*] does not involve a jury verdict form similar to the one in *Lyons*; it thus provides no occasion for us to decide whether the distinction that the court articulated in *Lyons* was correct."

344 Or at 329. Thus, *Lyons* remains controlling authority in the narrow circumstances presented here—*i.e.*, where the verdict form presents a compound question that makes it impossible to determine whether any of the claimed errors substantially affected the appellant's rights.

a conclusion that no mower defect or failure to provide adequate operating instructions caused the injury.

Plaintiff responds that, as this case was argued, the verdict form did not actually present compound questions; rather, the question of defendants' failure to meet the appropriate standard of care was simply another way of phrasing the question of Norton's failure to properly apprehend the inherent danger of the mower and to operate it correctly; if the mower or the instructions were defective, that conclusion necessarily implied that the operator was not at fault and did not cause the injury.

Defendants' causation argument, however, is not that the accident was caused by Norton's operation of the mower. Rather, defendants assert, "It is possible [that] the jury's verdict was based on a lack of causation," because defendants "argued that any alleged defect or negligent conduct did not cause Isabelle Norton's injuries." There follows a citation to certain pages in defendants' closing argument. Those pages, in turn, refer to the testimony of Stricker, a recently retired Deere engineer. He testified that, even if Norton had not disabled the RIO function and the mower had automatically shut off the blades, the blades would nonetheless have continued to rotate by momentum. He also testified that, by calculating how long the blades would have continued to rotate and how fast the mower could move in reverse, he could determine that the blades would have continued to rotate while the mower moved approximately six feet backwards. He then testified that on-site evidence indicated that the accident occurred only two and one-half to three and one-half feet behind the spot where Norton began to move backwards. He concluded, "So the injury would have long been over by the time this tractor stopped even if Mr. Norton had not pushed the RIO [override] button." Thus, the jury could have decided that the mower was, in fact, defective in one of the ways alleged (it had the button that allowed the operator to override the system that would otherwise automatically shut off power to the blades), but that the defect did not cause the injury, because even without the RIO override button—even if the mower automatically shut off power to the blades when put

in reverse—under the facts of this case, the child would have been injured anyway.[3]

We agree with defendants. We recognize that there are numerous other ways to account for the jury's one-word answers on the verdict form, many of which may be more plausible. Under *Shoup* and *Lyons*, however, the dispositive question is whether plaintiff has carried his burden of demonstrating that the jury did *not* decide the case based on causation. If the jury reached its verdict based on causation, and that basis is supported by evidence, then all of plaintiff's arguments directed toward the question of defendants' fault are irrelevant and, for that reason, any error that those arguments might identify is harmless.

If defendants' causation argument was *not* supported by sufficient evidence, then causation cannot

---

[3] Plaintiff's operative complaint alleged, as relevant, that the mower was defective because "the machine had mowing blades that could be engaged and rotating while driving in reverse[.]" It is possible to read that allegation to assert, not that the defect was that the RIO override could be "engaged" by the override button, but that the defect in question was the ability of the blades to remain "engaged and rotating" even after RIO became operational and power to drive the blades was automatically shut off. That is not how the case was argued. Plaintiff's opening argument told the jury,

"It would have been easy for the corporation to make a residential riding lawnmower that simply would not cut children in reverse. The very tractor that injured Isabelle could not cut children in reverse if you just snip those little wires that go to that yellow [RIO override] button. Just cut the wires."

In cross-examining defendants' main witness, Stricker, plaintiff's counsel questioned him extensively about whether the existence of the override button itself changed the mower from a safe, "no-mow-in-reverse" machine into one that was dangerous because it could cut in reverse. In closing, plaintiff reminded the jury that Deere could have designed a safer machine, one with blades that

"can't have contact with children if only you took out that little, yellow, button. That's how a machine should be designed. *** Deere and Company chose to make that residential riding lawn mower back there with a button on the dash that turns off a child safety device, a child protection device that was designed to prevent exactly what happened in this case: It cut and goes in reverse. The child safety system works when that button is not pushed. If the child safety device is turned off, it cannot work when that button is pushed."

Thus, even if we were to conclude that the complaint alleged only that the mower was defective because, RIO or no RIO, the blades could rotate while the mower was in reverse—a conclusion we do not reach—we would nonetheless conclude that the allegation that the machine was defective because it had an override button was tried by implicit consent. ORCP 23 B ("When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings.").

stand as a valid alternative basis for the defense verdict, and the only valid basis would be defendants' culpability; in that case, plaintiff's assignments of error directed at defendants' culpability would be relevant and, if well taken, prejudicial. *See Lyons*, 337 Or at 325 ("Did the jury decide that Walsh was not negligent or, instead, did the jury decide that Walsh, although negligent, did not cause damage to plaintiffs? The answer is that we cannot tell; either decision would have been *permissible* on the evidence presented." (Emphasis added.)). We therefore must address the question of whether there is admissible evidence supporting the theory that the injury would have happened even if there had been no button to override the RIO system, as relevant to the product liability claim, or, with respect to the negligent failure to instruct claim, even if defendants' instructions were inadequate. Regarding instructions, the question is easily answered. Norton testified that he did not read the instructions that *were* provided; the jury permissibly could have inferred from the testimony that no amount of additional instructions would have prevented the accident.

The question whether the evidence supported a finding that the accident would have happened even if there were no RIO override—that is, even if the power to the blades automatically and inevitably ceased when the mower was put in reverse—is more complicated. As noted above, there is detailed testimony by Stricker to that effect. That fact, however, does not end our inquiry, because one of plaintiff's assignments of error, if meritorious, would render that evidence inadmissible: According to plaintiff, Stricker was not qualified to give accident reconstruction testimony.

We review the trial court's decision that a witness was or was not qualified as an expert for legal error. *State v. Rogers*, 330 Or 282, 315, 4 P3d 1261 (2000). Qualification criteria derive from OEC 702:

> "If scientific, technical or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by *knowledge, skill, experience, training or education* may testify thereto in the form of an opinion or otherwise."

(Emphasis added.) The appropriate question is whether the witness was "qualified to give testimony *relative to a particular topic*[.]" *Rogers*, 330 Or at 315 (emphasis in original). Plaintiff acknowledges that Stricker "undeniably had experience and expertise regarding the engineering of the Deere lawn mower, [but] he had no experience and expertise in reconstructing an accident." According to plaintiff, this case is analogous to *Myers v. Cessna Aircraft*, 275 Or 501, 553 P2d 355 (1976). In that case, the trial court refused to allow accident reconstruction testimony from a witness named Jensen. *Id.* at 519. The Supreme Court affirmed, explaining:

> "In this case, defendant introduced no evidence which would indicate that Jensen had any experience in investigating aircraft accidents except insofar as mechanical or engineering matters might be at issue. While there was evidence that Jensen had previously testified as an 'aircraft accident expert' in several other jurisdictions and was a member of the 'Society of Air Safety Investigators,' the record does not show that either his training or experience extended beyond the merely technical, engineering aspects of accident investigations. Moreover, during plaintiff's cross-examination it was disclosed that Jensen had no formal training as an accident investigator, had never attended a seminar on that subject, was not an aeronautical engineer, was not accredited as an instrument flight pilot, did not have a current pilot's license, and had never flown a light aircraft similar to the one involved in this crash."

*Id.* at 520-21 (footnote omitted).

*Myers* is not helpful to plaintiff. It was decided before *Rogers* definitively held that the standard of review for expert qualification issues is for legal error; the court in *Myers* applied an abuse of discretion standard, *id.* at 519, in affirming the trial court. Concluding that the trial court did not abuse its discretion in rejecting the testimony does not mean that the trial court would have erred as a matter of law by admitting it.

Further, unlike Jensen, Stricker was not without relevant experience or training. Stricker was a recently retired 40-year Deere employee with 30 years of experience designing tractors and mowers. He was one of the designers

of the mower that was involved in the accident, including its mowing deck, and he was involved in the group that performed all of the tests and evaluations of the mower's components and parts, including the deck, whose operation he had studied extensively. He was also past chair of Deere's Product Safety Committee, and had spent over 2,000 hours riding Deere mowers, either professionally or personally.

Stricker's accident reconstruction testimony relied almost entirely on analysis of the function of the mower, focusing on the cutting deck. He described for the jury (1) where the mower was located when, according to the undisputed testimony, Norton put it in reverse; (2) where the accident occurred based on the pattern of debris that it ejected; (3) based on the above, how far the mower had travelled before the accident occurred; (4) how fast the mower could operate in reverse; (5) based on the above, how much time had elapsed between when Norton put the mower in reverse and when the accident occurred; and (6) how fast the blades would have been rotating at that time. He summarized his findings for the jury as follows:

> "So the difference between—where the front of the deck was when he started to back up, and where the deck was when he stopped and the injury was over, it's a difference between 87 inches, and either 45 or 57 inches, for a total vehicle travel of 30 to 42 inches in this picture—in this view which is two and a half, three and a half feet. That's the total distance this tractor moved from the beginning to when the injury was over.

> "This tractor will not stop that fast. You need to press the reverse pedal fully. As you've seen in measurements we've taken, it will go anywhere up to six and a half feet before the blades come to a rest and the tires stop. And certainly six and a half feet is more than two and a half to three and a half feet. So the injury would have long been over by the time this tractor stopped even if Mr. Norton had not pushed the RIO [override] button."

Stricker, then, had extensive experience in how the mower worked, which constituted the gist of his reconstruction testimony. The only aspect of that testimony in which he was not obviously highly qualified involved transposing

distances in photographs into actual distances. Yet he carefully described that process, and, in fact, the jury viewed video and photographs that demonstrated the process in a lucid and step-by-step fashion.

"Proper application of OEC 702 requires assessment of the particular qualifications of each witness." *Rogers*, 330 Or at 316. In light of the nature of his testimony and his experience, we conclude that the court did not err in allowing him to present his accident reconstruction testimony.

Because Stricker's testimony was admissible, the jury could permissibly have concluded that, even if Deere's decision to allow RIO override, and Deere's and Ramsey-Waite's instructions about the override, did not meet the appropriate standard of care, those facts did not cause the accident; the accident would have happened even if there were no override option. Plaintiff did not meet his burden of establishing that the jury did *not* reach its verdict on that basis. Thus, because all of plaintiff's assignments of error except the one directed toward Stricker's qualifications focused on defendants' culpability and not causation, it is not relevant whether those assignments of error are well taken; even if plaintiff is correct and the court erred, plaintiff has not demonstrated that the error was prejudicial. Only one assignment of error was directed toward causation—the one alleging that Stricker was not qualified—and we reject that one. We therefore affirm.

Affirmed.